**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

PAUL MICHAEL HUSTON, a/k/a
PAUL MICHAEL BLAISE,

          Petitioner,

vs.

JASON SMITH, Superintendent of
Cherokee Mental Health Institution,
BRAD WITTROCK, Deputy/Acting
Superintendent of Cherokee Mental
Health Institution, and CHARLES
PALMER, Director of the Iowa
Department of Human Services,

          Respondents.

No. C 13-4063-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
PETITIONER'S AMENDED
PETITION FOR WRIT OF HABEAS
CORPUS PURSUANT TO 28 U.S.C.
§ 2254**

---

**TABLE OF CONTENTS**

I.    **INTRODUCTION**............................................................... **3**
    A.    *Factual Background* ............................................... **3**
        1.    *The criminal case* ....................................... **3**
        2.    *The first civil commitment trial and appeal* ........... **4**
        3.    *The second civil commitment trial* ..................... **6**
    B.    *Procedural Background* .......................................... **8**
        1.    *Huston's* **pro se** *petition*............................... **8**
        2.    *Huston's amended petition and the respondents' answer* ................................................ **9**
        3.    *The oral arguments* .................................... **10**

II.   **LEGAL ANALYSIS** ....................................................... **11**
    A.    *Standards For § 2254 Relief*.................................... **11**
    B.    *Claims Pressed By Counsel*...................................... **15**
        1.    *The right to effective counsel in civil commitment proceedings* ........................................... **15**
            a.    *Arguments of the parties* ....................... **15**

|   |   |   | *b.* | *Analysis* .......................................................... *17* |
|   | *2.* | | *Counsel's failure to preserve speedy trial rights....................* *20* |
|   |   |   | *a.* | *Arguments of the parties .......................................* *20* |
|   |   |   | *b.* | *Analysis .......................................................... 21* |
|   | *3.* | | *Counsel's failure to obtain a bifurcated trial ........................* *24* |
|   |   |   | *a.* | *Arguments of the parties .......................................* *24* |
|   |   |   | *b.* | *Analysis .......................................................... 26* |
| *C.* | | | *Claims Pressed By Huston* **Pro Se** *...........................................* 29 |
|   | *1.* | | *Huston's "Padilla claim".............................................* 29 |
|   | *2.* | | *Huston's religious claims ............................................* 30 |
|   |   |   | *a.* | *Arguments of the parties .......................................* 32 |
|   |   |   | *b.* | *Analysis .......................................................... 33* |
| *D.* | | | *Other Claims .....................................................................* 37 |
| *E.* | | | *Certificate Of Appealability.................................................* 37 |
| *III.* | | | *CONCLUSION.............................................................................* 38 |

Is Paul Michael Huston (a/k/a Paul Michael Blaise), an inmate of the Civil Commitment Unit for Sexual Offenders (CCUSO) in Cherokee, Iowa, entitled to *habeas* relief from his civil commitment pursuant to 28 U.S.C. § 2254? Huston's *habeas* counsel contends that Huston's civil commitment counsel provided ineffective assistance in failing to secure a bifurcated trial and in failing to preserve Huston's right to a speedy trial. Huston asserts additional claims *pro se*, including a "*Padilla* claim"[1] that his trial counsel

---

[1] *See Padilla v. Kentucky*, 559 U.S. 356 (2010).

in his underlying state criminal case failed to inform him that a collateral consequence of his guilty plea to a harassment charge might be his civil commitment as a sexually violent predator. The respondents deny that Huston has a clearly established federal right to effective assistance of counsel in civil commitment proceedings, but if he does, that his claims are without merit.

## I. INTRODUCTION
### A. *Factual Background*

Huston's legal odyssey involves a predicate criminal conviction and two civil commitment trials, post-conviction relief proceedings on his criminal conviction, and appeals of his civil commitment. I will lay out the milestones in that journey, as described by the Iowa appellate courts.

### 1. *The criminal case*

In its decision on Huston's direct appeal of his civil commitment, the Iowa Supreme Court described the circumstances leading to Huston's predicate criminal conviction as follows:

> As S.E. walked through River View Park in Fort Madison in October 2005, Paul Blaise [a/k/a Huston], who was collecting cans in the park, approached her and began asking her questions. He asked her if she was married, if she was sexually active, and if she would engage in anal sex. He wondered if she had ever been the victim of a violent crime, if she would use lubrication to have anal sex, if she would take her clothes off or have sex if someone asked her or threatened to hurt her. Although S.E. grew increasingly uncomfortable and quickened her pace, Blaise kept up with her while continuing to ask "hypothetical" questions. S.E. tried repeatedly to change the conversation and eventually ran away from Blaise and asked another pedestrian to walk her to her car. After warning another female pedestrian that "there

> was someone in the park talking about rape and guns and all
> kinds of sexual stuff," S.E. called the police. Officers located
> Blaise in the park and discovered he was carrying a gun.
> Blaise ultimately pled guilty to first-degree harassment and
> received a two-year sentence.

*In re Det. of Blaise*, 830 N.W.2d 310, 313 (Iowa 2013). There does not appear to be any dispute that Huston's criminal counsel never advised him that a possible consequence of his conviction or guilty plea to the harassment charge was civil commitment as a sexually violent predator pursuant to IOWA CODE CH. 229A. *See, e.g., Blaise v. State*, 801 N.W.2d 627, 2011 WL 2078091, *1 (Iowa Ct. App. May 25, 2011) (table op.) (final state court decision on Huston's appeal of denial of his petition for state post-conviction relief from his criminal conviction).

On December 6, 2005, Huston was convicted on his guilty plea and sentenced to two years of imprisonment. State Court Documents, Sealed Exhibit 31 (Judgment Entry of Iowa District Court For Lee County At Fort Madison). Huston's criminal conviction was final prior to his application for state post-conviction relief in May 2007.

### 2. *The first civil commitment trial and appeal*

The next step on Huston's legal odyssey was his first civil commitment trial. As the Iowa Supreme Court explained, "While Blaise was incarcerated for the harassment offense, the State sought to have him committed as a sexually violent predator (SVP) under Iowa Code chapter 229A." *In re Det. of Blaise*, 830 N.W.2d at 313. There does not appear to be any dispute that, prior to Huston's first civil commitment trial, his civil commitment counsel, appointed pursuant to IOWA CODE CH. 229A, moved the trial court to bifurcate the trial. His civil commitment counsel argued that Huston's entire background, including details about all of his past criminal acts and other matters, would be superfluous and, in fact, prejudicial to the jury's ability to decide the first question before them, that is, whether his harassment conviction was for a sexually violent offense,

as defined in IOWA CODE CH. 229A, but the motion to bifurcate was denied. *In re Det. of Blaise*, 770 N.W.2d 852, 2009 WL 1066767, *1 (Iowa Ct. App. April 22, 2009) (table op.) (intermediate appellate court decision on Huston's appeal of his civil commitment). As the Iowa Supreme Court also explained, "After a trial in January 2007, a jury found Blaise was an SVP and he was ordered committed for treatment. Blaise appealed." *In re Det. of Blaise*, 830 N.W.2d at 313.

There were further proceedings, in both the trial court and the appellate court, on the state's first attempt to civilly commit Huston. As the Iowa Supreme Court explained,

> In December 2007, Blaise sought a stay of his appeal and filed a motion for a new trial in the district court, alleging the doctor who had testified for the State in his SVP trial was an "admitted mentally ill pedophile with serious difficulty controlling his behavior." On February 28, 2008, we granted the stay and issued a limited remand which provided:
>
>> The motion for limited remand is granted for a period of sixty days to allow the district court to address the respondent's motion for new trial and the State's resistance. Counsel for the parties shall promptly inform the district court about this order.
>>
>> The clerk of district court shall transmit a certified, file-stamped copy of the district court's remand ruling to the clerk of the supreme court. Within fourteen days of the date of the district court's remand ruling, the parties shall file statements with the supreme court addressing the status of this appeal.
>>
>> Further appellate proceedings in this case are stayed during the above-stated limited remand period. This court retains jurisdiction.
>
> On remand, the district court granted Blaise's motion and set a new trial date for August. The State appealed from the district court's grant of new trial. On July 14, Blaise

executed a speedy trial waiver, which was filed with the district court on July 28. On July 31, we combined the two appeals, stayed the proceedings in the district court, and transferred the case to the court of appeals. The court of appeals issued its decision on April 22, 2009, affirming the district court's grant of a new trial. Procedendo issued on May 21.

*In re Det. of Blaise*, 830 N.W.2d at 313-14 (footnote omitted).

### 3. *The second civil commitment trial*

Before Huston's second civil commitment trial, his civil commitment counsel, again, moved to bifurcate his trial, this time "basing his argument on potential 'jury confusion,'" but that motion was, again, denied. *In re Det. of Blaise*, 830 N.W.2d at 314. The Iowa Supreme Court detailed the evidence presented at the second trial, as follows:

During the trial, the State offered extensive testimony from Blaise about his prior misconduct. The testimony included a wide range of past bad acts starting with behavior when he was a child, including setting a vehicle on fire, shooting another child in the face with a BB gun, and sexually assaulting a roommate while institutionalized. The State questioned Blaise about his sexual fantasies, such as exposing himself to women, anal intercourse, sexual intercourse with virgins, and assaulting female prison staff members.

The State also offered Blaise's testimony about his conviction for sexual abuse of a nine-year-old girl, and burglary and criminal mischief charges. The details of each of these crimes were revealed to the jury, including how he forced himself on and held down the nine-year-old and digitally penetrated her vagina with enough force to cause scarring, and how he damaged the burglary victim's car because she refused to have sex with him. The State also elicited testimony about his arrest for lifting a girl's skirt on

6

the street, as well as charges of identity theft and theft in the fifth degree.

In addition, the State elicited his testimony about threats he had made to staff while he was in jail for sexual abuse and read from an extremely violent and vicious letter he wrote to a female staff member, which threatened to torture her unless she had sex with him. The State's questioning of Blaise covered dozens of institutional infractions, including harassing female staff members, defecating on the floor, exposing himself, threatening to rape women, throwing semen at staff, masturbating in the presence of staff, and filing a lawsuit against a staff member requesting she wear different clothes so he could "see her butt."

Regarding his conversation with S.E. in the park, Blaise testified he was "looking for a date" when he first began talking to her, but that as soon as he found out she did not have sex "on the side" he was no longer interested in her sexually.

The State's expert, Dr. Amy Phenix, testified that the conduct resulting in Blaise's harassment conviction was sexually motivated. She also testified that Blaise suffered from various mental abnormalities and that he will more likely than not commit sexually violent offenses if he is not confined. Blaise's expert, Dr. Stephen Hart, testified that he could not be sure that Blaise's interaction with S.E. was sexually motivated. Dr. Hart's opinion relied on the fact that there was no evidence that Blaise was sexually aroused during the conversation and on the notion that Blaise's bad behavior and sexual acting out was a way for Blaise to express anger and frustration rather than a way to seek sexual gratification.

*In re Det. of Blaise*, 830 N.W.2d at 314.  The second civil commitment trial ended with the same verdict as the first, that is, Huston was found to be a sexually violent predator and was ordered committed.  *Id*.

On Huston's direct appeal of his civil commitment, the Iowa Supreme Court rejected his ineffective assistance of counsel claims based on failure to secure his speedy trial and failure to secure bifurcation of the trial, as well as his claim that the prosecution had prejudicially misstated the evidence. *Id*. at 315-25. The Iowa Supreme Court also stated, "We have also considered the arguments raised by Blaise in his pro se brief and find them without merit." *Id*. at 325. Consequently, the Iowa Supreme Court affirmed Huston's commitment pursuant to Iowa Code Ch. 229A. *Id*. These federal *habeas* proceedings followed.

## B.     Procedural Background

### 1.     Huston's pro se *petition*

On June 28, 2013, Huston filed *pro se* motions to proceed *in forma pauperis* and for counsel to assist him with his § 2254 case. *See* docket nos. 1 and 2. In his *pro se* Petition, which was attached to his Motion To Proceed *In Forma Pauperis* and later filed at docket no. 5, Huston asserted the following claims for § 2254 relief: (1) denial of religious freedom of expression, arising from his purported religious basis for comments to S.E.; (2) violation of due process of law through ineffective assistance of his criminal trial counsel for failing to advise him of all possible consequences of a guilty plea; (3) violation of due process of law through ineffective assistance of his criminal appellate counsel for "refus[al] to raise anything"; (4) violation of due process of law through ineffective assistance of civil commitment counsel in (a) failing to call a religious expert, (b) failing to request bifurcation effectively, and (c) failing to preserve his speedy trial rights; (5) violation of due process of law through ineffective assistance of post-conviction relief counsel in failing to address cases raised by the Iowa Court of Appeals in its decision and refusing to seek discretionary further review; (6) violation of due process of law of post-conviction relief appellate counsel for failing to raise additional claims;

and (7) violation of due process of law and equal protection, because he is a Messianic Jew, so that he should not have been prosecuted for his conduct toward S.E., but should have been forgiven.

In an Initial Review Order (docket no. 4), filed October 24, 2013, United States District Judge Donald E. O'Brien, to whom this case was originally assigned, granted Huston's Motion To Proceed *In Forma Pauperis* and his Motion For Appointment Of Counsel. Judge O'Brien also directed the Clerk of Court to file Huston's *pro se* Petition and directed *habeas* counsel to file an amended § 2254 petition within 45 days.

## 2. *Huston's amended petition and the respondents' answer*

After extensions of time to do so, *habeas* counsel filed both Petitioner's Amended Petition For Writ Of Habe[a]s Corpus (Amended Petition) (docket no. 22) and Petitioner's Memorandum In Support Of 2254 Application For Habeas Relief (Petitioner's Memorandum) (docket no. 23) on May 19, 2014. The Amended Petition ostensibly incorporates, by reference, all of Huston's *pro se* Petition, but then states the grounds for relief as follows:

> 3. That the grounds for Petitioner's Habeas Corpus Petition are that he received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution in the following regards:
>
> > a) Trial counsel failed to effectively seek and receive a bifurcated trial.
> >
> > b) Trial counsel failed to file a motion to dismiss and enforce the violation of Petitioner's speedy trial rights.
> >
> > c) The Petitioner was denied rights to Equal Protection, Due Process and Effective Representation of Counsel in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

Amended Petition at ¶ 3. In Petitioner's Memorandum, however, *habeas* counsel argues only the grounds set out in subparagraphs a) and b). *Habeas* counsel then explains that Huston had expressed a desire to raise a "*Padilla* claim," among other issues, in a separate *pro se* filing, rather than have *habeas* counsel file an *Anders* argument on those issues. Petitioner's Memorandum at 12-13. Huston did not file a *pro se* brief.

On June 27, 2014, the respondents filed their Answer To Section 2254 Petition For Writ Of Habeas Corpus (docket no. 27) and an appendix of state court documents (docket no. 28). After an extension of time to do so, the respondents filed their 28 U.S.C. § 2254 Merits Brief (Respondents' Brief) (docket no. 35) on September 15, 2014. The respondents argue that there is no clearly established federal constitutional right to counsel in civil commitment proceedings; that, if there is such a right, the Iowa Supreme Court reasonably rejected Huston's claims of ineffective assistance of counsel as to bifurcation and speedy trial rights; that Huston's additional *pro se* claims are abandoned, waived, or unexhausted and procedurally defaulted; and that, even if Huston's *pro se* claims are properly before the court, they are without merit.

### 3. The oral arguments

Eventually, on July 7, 2015, Judge O'Brien held telephonic oral arguments on Huston's § 2254 claims. *See* Hearing Minutes (docket no. 42). Before he could issue a ruling on Huston's Amended Petition and *pro se* claims, Judge O'Brien passed away, and this case was reassigned to me. I have reviewed all of the briefing and other documents submitted in this case as well as an unedited realtime transcript of the July 7, 2015, oral arguments before Judge O'Brien.

Prior to the oral arguments, *habeas* counsel and respondents' counsel had conferred in an effort to narrow the issues and expedite the proceedings. Thus, *habeas* counsel and respondents' counsel, first, expressly addressed the respondents' argument that, in a sexually violent predator civil commitment proceeding, the alleged predator is

not entitled to effective assistance of counsel under the United States Constitution. Assuming that Huston can assert federal ineffective assistance claims, *habeas* counsel and respondents' counsel also argued Huston's two ineffective assistance claims concerning bifurcation and speedy trial. [2] Huston also pressed additional *pro se* claims,[3] to which the respondents responded. Specifically, Huston argued that he was "in custody" pursuant to his criminal conviction into his civil commitment for purposes of a "*Padilla* claim," which is that his criminal trial counsel had not advised him that civil commitment was a possible consequence of his guilty plea to harassment. He also argued that there was a free speech and religious aspect to his alleged harassment crime, so that it was not sexually motivated, if it could be considered a crime at all.

## II.    LEGAL ANALYSIS

### A.    Standards For § 2254 Relief

I must consider Hutson's claims in light of the standards for § 2254 relief. Since the passage of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), *habeas* review by the federal courts of state court convictions and the state courts' denials of post-conviction relief, pursuant to 28 U.S.C. § 2254, is limited and, at least ordinarily, deferential. Specifically, if a claim has been "adjudicated on the merits in State court," a federal habeas court may not grant relief unless "the adjudication of the claim . . .

---

[2] Huston also made *pro se* arguments that federal due process rights entitled him to effective assistance of counsel in civil commitment proceedings and that his civil commitment counsel was ineffective as to bifurcation.

[3] Judge O'Brien explained at the telephonic oral arguments that he was permitting Huston to make *pro se* arguments, even though he is represented by counsel in these proceedings, because Huston and his counsel were not in the same location for the telephonic oral arguments. Thus, he explained, they could not confer to make sure that counsel addressed all of the issues that Huston wanted addressed. For the same reasons, I will consider Huston's *pro se* arguments at the telephonic oral arguments.

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Johnson v. Williams*, ___ U.S. ___, ___, 133 S. Ct. 1088, 1091 (2013) (quoting § 2254(d) (citations and quotation marks omitted)). As the United States Supreme Court has explained,

> This Court, time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. ----, ----, 134 S.Ct. 10, 16, 187 L.Ed.2d 348 (2013). Under § 2254(d)(1), "'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *White v. Woodall*, 572 U.S. ----, ----, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011)).

*White v. Wheeler*, ___ U.S. ___, ___, 136 S. Ct. 456, 460 (2015). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

As a consequence of the limitations on relief under § 2254(d)(1), "[t]he starting point for cases subject to § 2254(d)(1) is to identify the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs the habeas petitioner's claims." *Marshall v. Rodgers*, ___ U.S. ___, ___, 133 S. Ct. 1446, 1449 (2013); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). "Clearly established law" means "'the holdings, as opposed to the

dicta, of [the Supreme] Court's decisions.'" *Howes v. Fields*, ___ U.S. ___, ___, 132 S. Ct. 1181, 1187 (2012) (quoting *Williams*, 529 U.S. at 412)).

Once the "clearly established law" has been identified, the court must consider both the "contrary to" and "unreasonable application" clauses of § 2254(d)(1), because they have "independent meaning." *Williams*, 529 U.S. at 405. A state court decision is "contrary to" clearly established federal law, within the meaning of § 2254(d)(1), "if the state court 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases.'" *Lafler v. Cooper*, ___ U.S. ___, ___, 132 S. Ct. 1376, 1390 (2012) (quoting *Williams*, 529 U.S. at 405)). "A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [its] precedent." *Williams*, 529 U.S. at 406. A federal court's belief that it might have reached a different result is not enough to show that the state court decision was "contrary to" established federal law, where the state court applied the correct standard under established Supreme Court law. *Id*. A state court's decision involves an "unreasonable application" of federal law, within the meaning of § 2254(d)(1), only if "'there was no reasonable basis for' the [state court's] decision." *Cullen*, 563 U.S. at 188 (quoting *Harrington v. Richter*, 562 U.S. 86, 98 (2011)). Thus, "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Richter*, 562 U.S. at 101 (emphasis in the original) (quoting *Williams*, 529 U.S. at 410).

Even if a petitioner establishes that the state court's determination was "contrary to" or an "unreasonable application of" federal law, within the meaning of § 2254(d)(1), that determination does not, standing alone, entitle the petitioner to relief. Rather, it only entitles the petitioner to *de novo* consideration by the federal court of the petitioner's underlying constitutional claim for post-conviction or *habeas* relief. *See Johnson*, ___

U.S. at ___, 133 S. Ct. at 1097 ("Even while leaving 'primary responsibility' for adjudicating federal claims to the States, AEDPA permits de novo review in those rare cases when a state court decides a federal claim in a way that is 'contrary to' clearly established Supreme Court precedent." (internal citations omitted)); *Lafler*, ___ U.S. at ___, 132 S. Ct. at 1390-91 (holding that, where the state court's decision was "contrary to" clearly established federal law, because it failed to apply the *Strickland* standards to an ineffective assistance of counsel claim, the federal court "can determine the principles necessary to grant relief" and apply them to the facts of the case); *Richter*, 562 U.S. at 100 (stating that § 2254(d)(1)'s exception "permit[s] relitigation where the earlier state decision resulted from an 'unreasonable application of' clearly established federal law"); *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) (stating that, when the state court's adjudication was "contrary to" federal law, within the meaning of § 2254(d)(1), "[a] federal court must then resolve the claim without the deference AEDPA otherwise requires"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (performing the analysis required under *Strickland*'s "prejudice" prong without deferring to the state court's decision, because the state court's resolution of *Strickland*'s "deficient performance" prong involved an "unreasonable application" of federal law, and the state court had considered the "deficient performance" prong dispositive).

Section 2254(d)(2), authorizing relief where the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), also requires some further explication. Specifically,

> [a federal court] may not characterize these [challenged] state-court factual determinations as unreasonable "merely because [the federal court] would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841, 175 L.Ed.2d 738 (2010). Instead, § 2254(d)(2)

requires that [the federal court] accord the state trial court substantial deference. If "'[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's … determination.'" *Ibid.* (quoting *Rice v. Collins*, 546 U.S. 333, 341–342, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006)). As we have also observed, however, "[e]ven in the context of federal habeas, deference does not imply abandonment or abdication of judicial review," and "does not by definition preclude relief." *Miller–El v. Cockrell*, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

*Brumfield v. Cain*, ___ U.S. ___, ___, 135 S. Ct. 2269, 2277 (2015). Thus, the question is whether the federal court's "examination of the record before the state court compels [the federal court] to conclude that [the state court's] critical factual determinations were unreasonable." *Id.*

I will apply these standards to Huston's various claims for § 2254 relief.

## B.        *Claims Pressed By Counsel*

As explained, above, Huston's *habeas* counsel expressly argues only two of the various claims originally set out in Huston's *pro se* Petition. Both of those claims are claims of ineffective assistance of counsel in Huston's civil commitment proceedings, one based on failure to preserve Huston's right to a speedy trial, and another based on failure to obtain a bifurcated trial. The question *ante*, squarely raised by the respondents, is whether Huston had a federally protected right to counsel in the civil commitment proceedings at all.

### 1.      *The right to effective counsel in civil commitment proceedings*
#### a.      *Arguments of the parties*

Hutson argues in his Memorandum that the Iowa Supreme Court ruled in *In re Detention of Crane*, 704 N.W.2d 437 (2005), that, as a threshold matter, individuals who

are the subject of Chapter 229A civil commitment proceedings have a right to effective assistance of counsel. He then argues, with no citation to any authority, "This right is guaranteed to Huston through the Sixth Amendment to the United States Constitution." Petitioner's Memorandum at 12.

In their Brief, however, the respondents take issue with Huston's bald assertion. The respondents argue, "Ineffective assistance of counsel in civil commitment hearings is not a clearly established right under any decision of the United States Supreme Court." Respondent's Brief at 14. The respondents acknowledge that, if presented with the question in the future, the United States Supreme Court might well conclude that the Sixth Amendment right to effective counsel extends to individuals facing civil commitment—and this court and many other courts might believe that to be true. Nevertheless, they argue, only the United States Supreme Court can "clearly establish" such a right for purposes of § 2254 relief. The respondents also point out that the explicit language of the Sixth Amendment states that the right to counsel applies to "criminal prosecutions." The respondents assert that, in *Vitek v. Jones*, 445 U.S. 480 (1980), the United States Supreme Court declined to find a right to counsel, guaranteed by the due process protections of the Fourteenth Amendment, in non-criminal involuntary commitment proceedings.

At the telephonic oral arguments before Judge O'Brien, Huston's counsel argued that *In re Detention of Crane* is "dispositive" on this issue, because the Iowa Supreme Court held that individuals in civil commitment proceedings are entitled to effective assistance of counsel defined by the standards in *Strickland v. Washington*, 466 U.S. 668 (1984). Huston amplified counsel's argument by asserting that he has a federal due process right to effective assistance of counsel, where counsel is required in civil commitment proceedings as a matter of state law. The respondents reiterated that, while a court considering the issue might well conclude that there is a right to counsel in civil

commitment proceedings, there is no such right "clearly defined" by the United States Supreme Court.

### b. Analysis

Contrary to *habeas* counsel's argument, *In re Detention of Crane*, 704 N.W.2d 437 (Iowa 2005), is a long way from "dispositive" of this issue, for three independent reasons. First and foremost, *In re Detention of Crane* is a *state* supreme court decision, but § 2254(d)(1) makes clear that a § 2254 petitioner must demonstrate that "the adjudication of the claim . . . (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*." 28 U.S.C. § 2254(d)(1) (emphasis added). Neither Huston nor his *habeas* counsel has cited me any United States Supreme Court decision clearly establishing a federal constitutional right to effective assistance of counsel in civil commitment proceedings.

Second, in *In re Detention of Crane*, the Iowa Supreme Court did not, in fact, *hold* that there was a federal constitutional right to effective assistance in civil commitment proceedings pursuant to IOWA CODE Ch. 229A. Rather, the court explained,

> As a threshold matter, we note that in this appeal the State concedes that respondents in chapter 229A proceedings have the right to effective assistance of counsel. Both parties therefore analyze Crane's first claim according to ordinary ineffective-assistance-of-counsel jurisprudence. For this reason, we do the same.

*In re Det. of Crane*, 704 N.W.2d at 438-39 (footnote omitted). The Iowa Supreme Court explained, further, in a footnote,

> The State makes this concession notwithstanding the fact that chapter 229A proceedings are civil and not criminal in nature, and therefore the Sixth Amendment is not directly implicated. The State posits that because a respondent in a

> chapter 229A proceeding has a statutory right to counsel, *see* Iowa Code § 229A.6(1), due process demands the appointed counsel provide effective assistance. This appears to be consistent with precedent. *See In re D.W.*, 385 N.W.2d 570, 579 (Iowa 1986) (applying similar reasoning in termination of parental rights cases); *Patchette v. State*, 374 N.W.2d 397, 398-99 (Iowa 1985) (postconviction proceedings).

*In re Det. of Crane*, 704 N.W.2d at 438 n.3. Plainly, adhering to a party's concession is not an independent determination of the issue by the court. Furthermore, noting the reference to "due process" in a party's "concession" is plainly not a determination that "due process" applies or that the "due process" in question is based in the United States Constitution, rather than Iowa law.

Finally, the Iowa Supreme Court's determination that a claim of ineffective assistance of counsel in civil commitment proceedings must be proved according to the standards stated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984),[4] is *not* a determination that the Sixth Amendment right to effective counsel at issue in *Strickland* *also* applies. It is only a determination of the standards for proof for a claim of ineffective assistance of counsel, where IOWA CODE CH. 229A provides a right to counsel.

---

[4] The pertinent part of the Iowa Supreme Court's decision in *In re Detention of Crane* is as follows:

> To succeed on an ineffective-assistance-of-counsel claim, a defendant must prove (1) trial counsel failed to perform an essential duty and (2) prejudice resulted. *State v. Stallings*, 658 N.W.2d 106, 108-09 (Iowa 2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)). Failure to prove either element is fatal to the claim. *See State v. Dalton*, 674 N.W.2d 111, 119 (Iowa 2004).

*In re Det. of Crane*, 704 N.W.2d at 439.

As to this issue, Huston's *pro se* argument that the right to effective assistance of counsel is a matter of *federal* due process, where the right to counsel arises from state law, has more initial traction than his *habeas* counsel's arguments. This is so, not because *In re Detention of Crane* expressly refers to a "due process" right to effective counsel in such proceedings (at least under IOWA CODE CH. 229A), but because the United States Supreme Court has observed that "[o]ur case law originally derived that right [to effective assistance of counsel] from the Due Process Clause, and its guarantee of a fair trial." *Lafler*, ___ U.S. at ___, 132 S. Ct. at 1392 (citing *United States v. Gonzalez–Lopez*, 548 U.S. 140, 147 (2006)). As the Court explained, however, "[T]he seminal case of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), located the right within the Sixth Amendment." *Id.* As the respondents point out, the Sixth Amendment defines the right "to have the Assistance of Counsel for his defence" as pertaining to "all criminal prosecutions," U.S. CONST., Amend VI, not to all proceedings involving possible deprivation of "life, liberty, or property." *See* U.S. CONST., Amend V, Amend. XIV.

Even that is not the end of the matter, however. As the United States Supreme Court has also recognized (in a case cited by respondents for other reasons), "We have repeatedly held that state statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment." *Vitek v. Jones*, 445 U.S. 480, 488 (1980). The Court also reiterated,

> We have recognized that for the ordinary citizen, commitment to a mental hospital produces "a massive curtailment of liberty," *Humphrey v. Cady*, 405 U.S. 504, 509, 92 S.Ct. 1048, 1052, 31 L.Ed.2d 394 (1972), and in consequence "requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979); *O'Connor v. Donaldson*, 422 U.S. 563, 580, 95 S.Ct. 2486, 2496, 45 L.Ed.2d 396 (1975) (BURGER, C. J., concurring).

*Vitek*, 445 U.S. at 492. Ultimately, however, a majority of the Court concluded that even a person suffering from a mental disease or defect requiring involuntary commitment was not entitled to "a licensed attorney," but only to "competent help" at the commitment hearing. *Id.* at 497 (although four justices would have held that "such a prisoner is more likely to be unable to understand or exercise his rights," so that "it is appropriate that counsel be provided to indigent prisoners whom the State seeks to treat as mentally ill," the holding of the Court was limited by Justice Powell's conclusion, in a separate concurring opinion, that such a person was only "entitled to competent help at the hearing," but not to "a licensed attorney to aid him"). The United States Supreme Court has never overruled *Vitek* or expressly held that a person facing civil commitment is entitled to effective assistance *of counsel* in the commitment proceedings.

Thus, Huston's claims premised on a right to effective assistance of counsel in civil commitment proceedings are subject to dismissal, because there is no "clearly established" federal law requiring effective assistance of counsel in these circumstances, as required for relief pursuant to § 2254(d)(1). Notwithstanding this conclusion, I will also consider, in the alternative, whether Huston's claims of ineffective assistance of civil commitment counsel would have merit, if there were a federal right to effective assistance of counsel in such proceedings.

### 2. Counsel's failure to preserve speedy trial rights

One of the "ineffective assistance" claims argued by Huston's *habeas* counsel is that Huston's civil commitment counsel was ineffective in failing to preserve Huston's speedy trial rights before his second civil commitment trial. The respondents argue that, assuming that there is a federally protected right at issue, this claim is without merit.

### a. Arguments of the parties

Huston argues that, pursuant to Iowa Code § 229A.7(3), a person subject to civil commitment proceedings has a right to a hearing within 90 days of the determination of

probable cause, and that the failure to meet this "speedy trial" requirement dictates dismissal, unless there is a waiver or good cause not attributable to the person. He also argues that, after a successful appeal, speedy trial rights begin again from the date of the *procedendo*. He contends that his waiver, filed in 2008, while his first civil commitment verdict was on appeal and during a "limited" remand, was ineffective as to his new trial in 2009, because the "clock" had started over with the issuance of *procedendo* by the Iowa Supreme Court affirming the grant of a new trial and because the trial court lacked jurisdiction to set a new trial prior to the issuance of *procedendo*.

The respondents argue that the "speedy trial" right at issue was a matter of state statutory law, not a federal right. The respondents also argue that the Iowa Supreme Court was not unreasonable in its conclusion that Huston's civil commitment counsel did not perform ineffectively in failing to preserve Huston's state statutory "speedy trial" right. The respondents point out that the Iowa Supreme Court confronted and rejected the arguments that Huston now makes, holding that Huston's waiver was effective as to his new trial after appeal and that the trial court had jurisdiction to set Huston's new trial during the "limited" remand.

At the telephonic oral arguments, Huston's *habeas* counsel expanded his argument by asserting that apparently contrary positions of Huston's civil commitment counsel—opposing a stay of proceedings, but seeking a waiver of "speedy trial" rights—cast doubt on whether Huston ever really wanted to waive a speedy trial.

### b.    Analysis

It does not appear that Huston ever claimed before the state courts that his waiver of a speedy civil commitment trial was "involuntary" or that his civil commitment counsel was ineffective in somehow "coercing" him into waiving his speedy trial rights. Thus, such a claim—offered for the first time at oral arguments before this court—is procedurally defaulted, Huston has not attempted to show "cause and prejudice" to

excuse such a default, and the claim, thus, cannot provide a basis for relief. *See* 28 U.S.C. § 2254(b)(1)(A) (a § 2254 claim cannot be granted unless "the applicant has exhausted the remedies available in the courts of the State"); *Cullen*, 563 U.S. at 181 ("Sections 2254(b) and (c) provide that a federal court may not grant such applications unless, with certain exceptions, the applicant has exhausted state remedies.").

The Iowa Supreme Court did hear and reject Huston's claim that his civil commitment counsel was ineffective in otherwise failing to preserve his speedy trial rights. Specifically, the Iowa Supreme Court concluded that the district court had acted *within* the scope of the "limited" remand, because "the district court ruled on the issue for which the case was remanded and did not, by setting a new trial date, do anything to jeopardize the appeal still pending." *In re Det. of Blaise*, 830 N.W.2d at 316-17. Indeed, the Iowa Supreme Court concluded, where the district court knew that the parties were required to report back to the Iowa Supreme Court on the district court's ruling, "the district court was well aware that the trial date could be stayed after the supreme court decided what to do with the information gained from the parties' status reports." *Id.* at 317. The Iowa Supreme Court also concluded that the district court retained jurisdiction over matters "collateral" to the appeal, that Huston's waiver of speedy trial was one such "collateral" matter, and that the timing of the waiver did not affect the merits of the appeal, so that "the district court acted within its jurisdiction when it accepted [Huston's] waiver." *Id.*

Next, the Iowa Supreme Court rejected Huston's argument that his speedy trial right "renewed" upon the issuance of *procedendo* after the appeal was completed. *Id.* The Iowa Supreme Court explained,

> In this case, [Huston's] waiver executed on July 14, 2008, clearly addressed his *new* trial. It was executed and filed after the district court granted his motion for new trial. Although the original appeal concluded and procedendo issued after

> [Huston's] waiver, procedendo did not restart the speedy trial
> clock for the retrial because [Huston] had already waived his
> challenge to its timeliness. [Huston] had the ability to revoke
> his speedy trial waiver after the original appeal had
> concluded. But he never exercised the ability.

*In re Det. of Blaise*, 830 N.W.2d at 317 (emphasis in the original). Consequently, the Iowa Supreme Court concluded that Huston's speedy trial waiver was valid and that his civil commitment counsel did not perform deficiently in failing to move for dismissal on speedy trial grounds. *Id.*

Finally, the Iowa Supreme Court rejected Huston's argument that his civil commitment counsel was ineffective for allowing him to execute an "unnecessary" speedy trial waiver, where the State had appealed the order granting a new trial. *Id.* The Iowa Supreme Court concluded that Huston had failed to demonstrate that he was prejudiced by the waiver:

> In the proceedings below, all parties—the State, [Huston], and
> the district court—operated under the belief that [Huston] had
> waived his right to a speedy retrial. What might have
> happened had the court and the parties not understood
> [Huston] waived his speedy trial rights is conjecture. We
> cannot speculate that the State would not have commenced the
> retrial of [Huston] within ninety days had the waiver not been
> executed.

*In re Det. of Blaise*, 830 N.W.2d at 317.

Huston has reasserted the same arguments, here. What he has not done, however, is attempt to show how the Iowa Supreme Court's adjudication of any of those arguments "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Johnson*, ___

U.S. at __, 133 S. Ct. at 1091 (quoting § 2254(d) (citations and quotation marks omitted)). Huston has not identified any *United States Supreme Court decision* that is contradicted by the Iowa Supreme Court's decision, *see Lafler*, ___ U.S. at ___, 132 S. Ct. at 130, nor any *United States Supreme Court decision* involving a set of facts that is materially indistinguishable to his and involving a different result, *see Williams*, 529 U.S. at 406. Where the belief of a federal court that it might have reached a different decision is not enough to afford a petitioner relief pursuant to § 2254(d)(1)'s "contrary to" clause, *see id.,* it is also clear that the *petitioner's* belief that the state court should have reached a different decision is not enough. Furthermore, I conclude that there was, indeed, a "reasonable basis" for the state court's disposition of Huston's speedy trial claim, *as a matter of state law*—as the Iowa Supreme Court explained—so that no relief is warranted pursuant to § 2254(d)(1)'s "no reasonable basis" clause. *Cullen*, 563 U.S. at 188. Finally, I cannot say, from my examination of the record before the state court, that I am "compel[led] . . . to conclude that [the Iowa Supreme Court's] critical factual determinations [in disposing of this claim] were unreasonable," such that Huston is entitled to relief pursuant to § 2254(d)(2).

In short, Huston's claim that his civil commitment counsel was ineffective in failing to preserve his speedy trial rights is denied.

### 3. Counsel's failure to obtain a bifurcated trial

The other claim pressed by Huston's *habeas* counsel is that Huston's civil commitment counsel was ineffective for failing to effectively seek a bifurcated trial. The respondents contend that Huston is not entitled to any relief on this claim.

#### a. Arguments of the parties

Huston argues the he was "certainly" entitled to a bifurcated trial, because it was highly prejudicial for the same jury to hear evidence about his prior conviction for sexually assaulting a nine-year-old girl, evidence of his prior sexually motivated conduct

towards corrections staff, and other misconduct while considering whether his 2005 harassment conviction was "sexually motivated." He argues that such evidence of prior crimes and misconduct could have improperly influenced the jurors. He relies heavily on the dissent in *Barker v. State*, 877 So.2d 59 (Fla. 4th Dist. Ct. App. 2004), as showing why bifurcation was necessary and appropriate, as a matter of constitutional fairness and federal due process. He also contends that the state's expert testimony, which relied, in part, on such evidence, should not have been admissible as to the question of the "sexual motivation" of the 2005 harassment conviction. He disputes that jurors could "compartmentalize" the evidence and findings to decide this question fairly.

The respondents argue that Huston's civil commitment counsel had argued "prejudice" of the evidence as a basis for bifurcation before his first trial, before the same judge, but that the judge declined to bifurcate the first trial. The respondents point out that the judge concluded, before the second trial, that Huston could receive a fair, non-bifurcated trial, where the judge was aware of all of the evidence in question from hearing the first trial. The respondents also point out that civil commitment counsel *did* move to bifurcate both trials, and that the Iowa Supreme Court concluded that Huston was not prejudiced by counsel's failure to argue the "bifurcation" issue differently or better, because the evidence on the question of whether the 2005 harassment conviction was "sexually motivated" was overwhelming. The respondents also argue that it is likely that the "bad acts" evidence in question *was* relevant and not unduly prejudicial as to the question of whether the 2005 harassment conviction was "sexually motivated," particularly where Huston's sexual motivations or propensities were relevant to the second required finding for his civil commitment, that is, whether he was likely to commit future sexually violent crimes.

Huston's *habeas* counsel's only additional contention at oral arguments was that the "cursory" way in which civil commitment counsel raised the bifurcation issue before

the second trial, when Huston asked him to, demonstrated that civil commitment counsel was not really "invested" in raising the issue. The respondents argued that the same circumstances showed that civil commitment counsel knew the issue was unlikely to come out his way, so that he was "invested" in pursuing issues with more likelihood of benefitting Huston, as a matter of professional judgment.

### b. Analysis

The Iowa Supreme Court rejected Huston's claim of ineffective assistance of counsel as to bifurcation. The Iowa Supreme Court explained, first,

> To establish [Huston] was subject to commitment under chapter 229A, the State was required to prove two elements: that [Huston] was convicted of or charged with a sexually violent offense and that he suffers from a mental abnormality making him likely to commit further sexually violent offenses if he is not confined. *See* Iowa Code § 229A.2(11).

*In re Det. of Blaise*, 830 N.W.2d at 318. The court noted, further, that, because Huston's "harassment" offense was not listed as a "sexually violent offense" in Iowa Code § 229A.2(10)(a)-(f), the state was required to prove beyond a reasonable doubt that the harassment offense was sexually motivated. *Id.*

More specifically, as to the ineffective assistance claim concerning bifurcation, the Iowa Supreme Court concluded that the matter could be properly resolved on the "prejudice" prong of an ineffectiveness claim subject to a *Strickland* analysis. *Id.* at 318. This was so, because the Iowa Supreme Court concluded that the general principle that counsel is not deficient for failing to raise a meritless claim is not easily distinguished from the principle that counsel's failure to raise a claim lacking merit will not ordinarily be deemed prejudicial, nor could the principles be neatly separated in Huston's case. *Id.*

Next, the Iowa Supreme Court agreed that some of the evidence of Huston's "bad acts" was not relevant to the determination of whether his harassment of S.E. was

"sexually motivated" and created a risk of prejudice. *Id*. at 321. Nevertheless, the court concluded,

> [W]hen we consider the evidence of Blaise's interaction with S.E.—standing alone and apart from any evidence of Blaise's prior conduct—we are convinced that any reasonable person could only find Blaise's conversation with S.E. was sexually motivated.

*In re Det. of Blaise*, 830 N.W.2d at 321. The court turned to analysis of the "prejudice" prong of a claim of ineffective assistance of counsel only after first carefully considering evidence of whether or not Huston was "sexually aroused" during his conversation with S.E.; whether such arousal or lack of it was dispositive of the "sexual motivation" of Huston's harassment of S.E.; the extent to which the state's expert could properly rely on past "bad acts" evidence; and Huston's evidence intended to demonstrate the "religious" nature of his discussion with S.E. *See id*. at 321-23. On the "prejudice" prong, the court explained,

> In this case, when we disregard the evidence of [Huston's] prior bad acts and consider only the remaining evidence, our confidence in the outcome of the proceeding is not shaken. The graphic sexual nature of the statements made by [Huston] to S.E. is overwhelming evidence that the statements were sexually motivated, especially considered in conjunction with Dr. Phenix's testimony that [Huston] was aroused by and admittedly fantasized about nonconsensual sex. [Huston's] expert testimony presented to contradict the testimony of the State's expert on the issue of sexual motivation does not preclude our determination that [Huston] has failed to establish prejudice. *See Kenley v. Bowersox*, 275 F.3d 709, 712–14 (8th Cir.2002). Because in our view the evidence of [Huston's] statements to S.E.—standing alone and apart from any other acts evidence—overwhelmingly established [Huston's] sexual motivation in the harassment offense, we find no room for debate regarding whether *Strickland*

> prejudice resulted from any breach of duty by counsel.
> Accordingly, we conclude [Huston] was not prejudiced by his
> trial counsel's failure to adequately argue the trial should have
> been bifurcated to protect [Huston's] due process rights.

*In re Det. of Blaise*, 830 N.W.2d at 324. The Iowa Supreme Court clarified that it did not "wish to be understood as disapproving of bifurcation of trials under chapter 229A," and, indeed, relied on the dissent in *Barker*, on which Huston relies, as showing the "wisdom and value of bifurcating a trial in cases requiring the state prove both mental abnormality and sexual motivation." *Id.* (citing *Barker*, 877 So.2d at 67 (Farmer, C.J., dissenting)).

Again, Huston has reasserted the same arguments, here, that he presented to the Iowa Supreme Court. Again, he has not attempted to show how the Iowa Supreme Court's adjudication of any of those arguments "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Johnson v. Williams*, ___ U.S. ___, ___, 133 S. Ct. 1088, 1091 (2013) (quoting § 2254(d) (citations and quotation marks omitted)). Huston has not identified any *United States Supreme Court decision* that is contradicted by the Iowa Supreme Court's decision, *see Lafler*, ___ U.S. at ___, 132 S. Ct. at 130, nor any *United States Supreme Court decision* involving a set of facts that is materially indistinguishable to his and involving a different result, *see Williams*, 529 U.S. at 406. Indeed, it is clear that United States Supreme Court (and Eighth Circuit) precedent permits rejection of a claim of ineffective assistance of counsel *solely* on the basis of failure to satisfy the *Strickland* "prejudice" prong, as the Iowa Supreme Court did here. *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir.) (citing *Strickland v. Washington*, 466 U.S. 668, 697 (1984)), *cert. denied*, ___ U.S. ___, 132 S.Ct. 763 (2011); *accord*

*Hyles v. United States*, 754 F.3d 530, 533 (8th Cir. 2014) ("Failure to establish either prong of *Strickland* 'is fatal to a claim of ineffective assistance.'" (quoting *Morelos v. United States*, 709 F.3d 1246, 1250 (8th Cir. 2013))). Again, Huston's simple disagreement with the conclusions of the Iowa Supreme Court on this claim do not satisfy the requirement for relief pursuant to § 2254(d)(1)'s "contrary to" clause, any more than my own simple disagreement would. *See Williams*, 529 U.S. at 406. Furthermore, I conclude that there was, indeed, a "reasonable basis" for the state court's disposition of Huston's claim of ineffective assistance of counsel as to bifurcation, as effectively stated by the Iowa Supreme Court, so that no relief is warranted pursuant to § 2254(d)(1)'s "no reasonable basis" clause. *Cullen*, 563 U.S. at 188. Finally, I believe that much of the Iowa Supreme Court's analysis of this claim is based on either factual determinations or mixed factual and legal conclusions. I cannot say, from my examination of the record before the state court, that I am "compel[led] . . . to conclude that [the Iowa Supreme Court's] critical factual determinations [in disposing of this claim] were unreasonable," such that Huston is entitled to relief pursuant to § 2254(d)(2).

Huston's claim that his civil commitment counsel was ineffective in failing to obtain bifurcation of his second civil commitment trial is denied.

## C.     *Claims Pressed By Huston* Pro Se

As I mentioned, above, Huston also asserts *pro se* claims, including a "*Padilla* claim" and a claim that there was a free speech and religious aspect to his alleged harassment crime, so that it was not "sexually motivated," if it was a crime at all. The respondents argue that these claims are waived or without merit.

### 1.     *Huston's* "Padilla *claim*"

Huston argues that he was "in custody" pursuant to his criminal conviction into his civil commitment for purposes of a "*Padilla* claim," which is that his criminal trial

counsel had not advised him that civil commitment was a possible consequence of his guilty plea to a harassment charge. As interesting as Huston's "*Padilla* claim" might be, as well as his argument that he remained "in custody" pursuant to his predicate criminal conviction on into his civil commitment, I need not reach those issues. Huston's *habeas* counsel was correct when he advised Huston that this claim was not cognizable. This is so, because the United States Supreme Court held in *Chaidez v. United States*, ___ U.S. ___, 133 S. Ct. 1103 (2013), that *Padilla* is *not* retroactive to cases on collateral review. ___ U.S. at ___, 133 S. Ct. at 1107. The Court concluded that "*Padilla* . . . announced a 'new rule,'" *id*. at ___, 133 S. Ct. at 1111, but, "[w]hen [the United States Supreme Court] announce[s] a 'new rule,' a person whose conviction is already final may not benefit from the decision in a habeas or similar proceeding." *Id*. at ___, 133 S. Ct. at 1107. Huston's criminal conviction was final prior to the filing of his application for state post-conviction relief in May 2007. However, *Padilla* was not decided until March 31, 2010, *see* 559 U.S. at 356, long after Huston's criminal conviction was already final.

Huston's "*Padilla* claim" is denied.

### 2.    *Huston's religious claims*

In his *pro se* Petition, Huston also asserted three claims for relief based on what he alleges was the "religious" aspect of his encounter with S.E. Those grounds for relief are pleaded as follows:

> 1.    **Denial [of] freedom of Religious Expression:** The state mocked the fact my religious beliefs on forgiveness go to the extreme that you cannot press criminal charges on someone if you are forgiving them of the offense/harm done to you. The police incorrectly interpreted my comments as a threat to rape S.E. This was at both Criminal Hearing and Civil Commitment proceedings. I believe Jesus (Yeshua)'s teachings on forgiveness go to the extreme you cannot forgive someone and press criminal charges on them

too.  1st Amend. USCA.  Freedom of expression and religion.  I signed a statement with police to this fact before conviction.

\* \* \*

4.     **Due Process of Law Through Ineffective Assistance of Civil Commitment Counsel:**   . . . Counsel had an essential duty to request testimony of a religious expert:   To testify to whether or not my comments were religious in nature regarding Jesus['] doctrine of forgiveness.  (That such an extreme doctrine exists is true and would have shed new light on the alleged crime.)   The victim asked my religion and what I believed.   I told [civil commitment counsel] that we had to give the jury proof that the part of my conversation where the alleged crime happened, was religious in nature.   He refused, saying we didn't have to prove anything, that we were going on the basis I had an obnoxious personality and conversation.   This shows he was derelict in his duty, not once but twice. . . .

\* \* \*

7.     **Due Process of Law:**   I am denied the equal application of the laws because I am a Messianic Jew and believe in the extreme view of forgiveness that to have true forgiveness, one must not press criminal charges on someone who wronged them.   Because sending someone to prison is seeking revenge and is condemned in the New Testament.   Revenge is the Lord's prerogative.   Messianic Judaism and Christianity are very similar.   We both accept Yeshua (Jesus) as the Messiah (Christ).   Seeking a date and the initial sexual questions S.E. consented to answer were not criminal acts and when she changed the subject and we talked about religion, I am a licensed minister:  see Blaise Vs. Nix and Emmett 4:92-CV-20101 Hon. Celeste F. Bremer U.S. Magistrate presiding, June 7, 1993 Memorandum Opinion and Judgment.   She

> accepted the testimony that I am an ordained minister. Testimony by prison Chaplain who was a state employee at time of testimony.

*Pro Se* Petition at II. Grounds, ¶ 12, sub-¶¶ 1, 4, and 7.

### a.    *Arguments of the parties*

Huston's *pro se* contentions at oral arguments concerning these claims was as follows:

> The other thing that I was going to state was that I have stated all along that this was a free speech and religious issue as far as where the alleged crime come into play on the harassment case and therefore for purposes of the civil commitment they're relying on my comments by themselves as sexually motivated when religion, if you're using [parables] to prove forgiveness can't be considered sexual, especially when they're forgiveness angle and not for intention of getting sex or any of that because that wasn't what was even being talked about at the time. The first part of it wasn't even considered a crime which yeah, I can see that being considered sexual. But the free speech and free religion exercise is -- that's tantamount [paramount (?)] all throughout the United States that it's been well established long before my case.

Unedited Realtime Transcript of July 7, 2015, Hearing, 48:10-24 (bracketed edits by the court).

In their Brief, the respondents argue that these claims were abandoned or waived, because they were not repleaded or briefed by *habeas* counsel.  As to the merits of such claims, if the court decides to consider them notwithstanding waiver, the respondents assert that Huston's argument means that the state could not enforce any criminal law against him or members of his faith, which they argue, of course, is not correct.  Rather, the respondents argue, the state can protect its citizens from overt acts, even those undertaken pursuant to religious principles or beliefs, if the actions pose a substantial

threat to public safety, peace, or order, which Huston's acts toward S.E. did do. Thus, the respondents argue that Huston's civil commitment counsel did not perform deficiently by failing to raise a meritless argument. The respondents also construe Huston's religious arguments as an improper collateral attack on his underlying conviction.

### b. Analysis

The Iowa Supreme Court's decision on Huston's civil commitment appeal gives little indication of these "religious" claims. The first reference to a "religious" claim is the following:

> [Huston] testified that although he was initially looking for a date with S.E., once he found out she did not "fool around on the side" he was no longer sexually interested in her. He characterized the rest of the conversation as a "religious" discussion, in which the questions were meant to be parables and stated that he did not think she would be offended by the questions about anal sex because she was a nurse.

*In re Det. of Blaise*, 830 N.W.2d at 323. The only other possible reference to a "religious" claims is the Iowa Supreme Court's disposition of Huston's "other arguments," as follows: "We have also considered the arguments raised by [Huston] in his pro se brief and find them without merit." *Id*. at 325. Huston's *Pro Se* Final Brief before the Iowa Supreme Court, *see* State Court Documents, Appellant's Pro Se Final Brief (docket no. 28-11), however, is rife with contentions that Huston's civil commitment counsel should have presented a religious expert; that evidence of his religious views would have undermined any finding that the "criminal" part of his conversation with S.E. was sexually motivated; and claims that he could not be convicted of a crime because of his "extreme" religious view of forgiveness. Thus, Huston did attempt to present the "religious" arguments that he now makes before this federal court to the state's highest court, *pro se*, on direct appeal of his civil commitment.

Ordinarily, when a state appellate court affirms a lower court's decision, in its entirety or as to a particular claim or issue, without explanation or reasoning, a federal court on *habeas* review must "look through" the silent opinion and apply AEDPA review to the "last reasoned decision of the state courts." *Worthington v. Roper*, 631 F.3d 487, 497 (8th Cir. 2011). Here, however, there is no "last reasoned decision of the state courts," because the intermediate appellate decision of the Iowa Court of Appeals does not mention Huston's "religious" arguments at all, *see In re Det. of Blaise*, 770 N.W.2d 852 (table op.), and the Iowa district court's decision was simply an entry of judgment on a jury verdict. State Court Documents, Appendix (docket no. 28-7) at 252.

Where there is no "last reasoned decision of the state courts," other federal courts have concluded that the federal *habeas* court must independently review the record to determine whether the state court unreasonably applied federal law to the claims in question, but the federal court must still consider whether there was a "reasonable basis" for the state court's disposition. *See, e.g., Harrington v. Richter*, 562 U.S. 86, 98 (2011) ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."); *Fenenbock v. Director of Corrections for Cal.*, 692 F.3d 910, 919 (9th Cir. 2012) ("The state supreme court denied the state habeas petition without explanation. We must therefore 'independently review the record, [but] we still defer to the state court's ultimate decision.'" (quoting *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002)); *Samayoa v. Ayers*, 649 F.3d 919, 928 (9th Cir. 2011) ("Because the California Supreme Court denied the ineffective assistance of counsel claim without explanation, we independently review the record to determine whether the state court unreasonably applied *Strickland*."); *Brown v. Gibson*, 7 F. App'x 894, 910 (10th Cir. 2001) ("On direct criminal appeal, the Oklahoma Court of Criminal Appeals concluded, without explanation, the evidence did not warrant a second-degree murder instruction.

Based on our independent review of the record, we conclude this determination is reasonable.").

On my "independent review," I conclude that Huston's "religious freedom" and "equal protection/due process" claims, based on his religious belief that prosecuting him or committing him, rather than forgiving him, was unconstitutional, fail as a matter of law, under clearly established United States Supreme Court precedent. As the Supreme Court has explained,

> The door of the Free Exercise Clause stands tightly closed against any governmental regulation of religious beliefs as such, *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213. Government may neither compel affirmation of a repugnant belief, *Torcaso v. Watkins*, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982; nor penalize or discriminate against individuals or groups because they hold religious views abhorrent to the authorities, *Fowler v. Rhode Island*, 345 U.S. 67, 73 S.Ct. 526, 97 L.Ed. 828; nor employ the taxing power to inhibit the dissemination of particular religious views, *Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292; *Follett v. McCormick*, 321 U.S. 573, 64 S.Ct. 717, 88 L.Ed. 938; *cf. Grosjean v. American Press Co.*, 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660. *On the other hand, the Court has rejected challenges under the Free Exercise Clause to governmental regulation of certain overt acts prompted by religious beliefs or principles, for 'even when the action is in accord with one's religious convictions, (it) is not totally free from legislative restrictions.' Braunfeld v. Brown*, 366 U.S. 599, 603, 81 S.Ct. 1144, 1146, 6 L.Ed.2d 563. *The conduct or actions so regulated have invariably posed some substantial threat to public safety, peace or order. See, e.g., Reynolds v. United States*, 98 U.S. 145, 25 L.Ed. 244; *Jacobson v. Massachusetts*, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643; *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88

L.Ed. 645; *Cleveland v. United States*, 329 U.S. 14, 67 S.Ct. 13, 91 L.Ed. 12.

*Sherbert v. Verner*, 374 U.S. 398, 402-03 (1963) (emphasis added). Thus, there was nothing "contrary to law" or "unreasonable," as a matter of United States Supreme Court precedent, *see* 28 U.S.C. § 2254(d)(1) and (2), about the Iowa Supreme Court's implicit conclusion that Huston could be civilly committed for sexually-motivated harassment, even if Huston believed that committing him, rather than forgiving him, was contrary to his religious beliefs or principles. His sexually-motivated harassing conduct, without a doubt, posed a substantial threat to public safety, peace, and order. *Sherbert*, 374 U.S. at 403. There is not one whit of evidence in the record that Huston was civilly committed by the state in order to penalize or discriminate against him or Messianic Jews as a group because they hold religious views supposedly abhorrent to the authorities. *Id*. at 402.

The Iowa Supreme Court's implicit conclusion that Huston's civil commitment counsel did not provide ineffective assistance of counsel in failing to present a religious expert also is not "contrary to law" or "unreasonable," as a matter of United States Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1) and (2). As explained, above, the Iowa Supreme Court expressly concluded that Huston could not satisfy the "prejudice" prong of his claim of ineffective assistance of counsel as to bifurcation, because the evidence of the sexual motivation of Huston's conduct toward S.E. was "overwhelming." *See In re Det. of Blaise*, 830 N.W.2d at 324 (quoted, in pertinent part, above, a page 27). The Iowa Supreme Court also expressly noted that Huston was allowed to present to the jury his argument that his conversation with S.E. was religiously motivated, rather than sexually motivated. *Id*. at 323. Nothing but speculation suggests that, had Huston's civil commitment counsel called a "religious expert," doing so would have somehow overcome the "overwhelming" evidence of sexual motivation for his harassing conduct and convinced the jury or the state courts that his harassing conduct

was *not* sexually motivated. Because my independent review leads me to the conclusion that failing to call a "religious expert" was not prejudicial, the Iowa Supreme Court's implicit conclusion that civil commitment counsel was not ineffective in failing to do so was not "contrary to law" or "unreasonable." *See, e.g., Worthington*, 631 F.3d at 498 (United States Supreme Court precedent permits rejection of a claim of ineffective assistance of counsel *solely* on the basis of failure to satisfy the *Strickland* "prejudice" prong (citing *Strickland v. Washington*, 466 U.S. 668, 697 (1984); *accord Hyles*, 754 F.3d at 533 ("Failure to establish either prong of *Strickland* 'is fatal to a claim of ineffective assistance.'" (quoting *Morelos*, 709 F.3d at 1250)).

Huston's "religious" claims for *habeas* relief are denied.


### D.      Other Claims

To the extent that Huston has or has attempted to assert additional claims for § 2254 relief, either through counsel or *pro se*, I conclude that those claims are waived, because they were not expressly argued, and, if not waived, are without merit. Thus, any such claims are denied.


### E.      Certificate Of Appealability

Denial of Huston's claims for § 2254 relief requires me to consider whether or not Huston should be issued a certificate of appealability on any of those claims. *See* 28 U.S.C. § 2253. Huston must make a substantial showing of the denial of a constitutional right in order to be granted a certificate of appealability. *See Miller–El v. Cockrell*, 537 U.S. 322 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076–77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873–74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir.1997). "A substantial showing is a showing that

issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller–El v. Cockrell* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). I conclude that Huston failed to make a substantial showing that any issue or claim raised in his § 2254 Petition, whether *pro se* or by *habeas* counsel, is debatable among reasonable jurists, that a court could resolve any issue differently, or that any question deserves further proceedings. Consequently, a certificate of appealability is denied. *See* 28 U.S.C. § 2253(c)(1)(A); *Miller-El*, 537 U.S. at 335-36; *Cox*, 133 F.3d at 569.

## III.    CONCLUSION

Upon the foregoing, all claims in Huston's June 28, 2013 *pro se* Petition For Writ Of Habeas Corpus (filed at the court's direction on October 24, 2013, as docket no. 5), and his May 19, 2014 Amended Petition For Writ Of Habe[a]s Corpus (docket no. 22), are **denied** in their entirety. No certificate of appealability shall issue from this court in this case. *See* 28 U.S.C. § 2253(c)(1)(A).

**IT IS SO ORDERED**.

**DATED** this 11th day of January, 2016.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA